Paul William LITTLEFIELD, Plaintiff,

v.

FORT DODGE MESSENGER et al., Defendants.

No. C 76–3048.

United States District Court,
N. D. Iowa, C. D.

Dec. 29, 1978.

Paul W. Littlefield, pro se.

Herbert R. Bennett, Fort Dodge, Iowa, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM OPINION AND ORDER

McMANUS, Chief Judge.

This libel action was tried to the court November 1, 1978. All briefs, arguments and proposed findings of fact and conclusions of law now having been received, plaintiff's complaint is dismissed. The following, including the memorandum, shall constitute the court's findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff is a citizen of Missouri and at all times material was licensed to practice law in Iowa.

2. At all times material defendants Messenger Printing Company, Division of Ogden Newspaper, Inc. (Messenger) and Mike Glover were citizens of Iowa.

3. Messenger published a daily newspaper known as the "Fort Dodge Messenger", in Fort Dodge, Webster County, Iowa where Glover was employed as a reporter.

4. On December 19, 1974 Messenger published an article on its front page written by Glover about plaintiff's pending disciplinary proceedings entitled "Set Hearing on License Suspension."

5. Said article stated in part:

(Par. 2) . . . Littlefield pleaded guilty in August, 1973 to charges of at-

tempting to commit a felony in Fayette County, Ky. . . . One of the terms of the probation was that he not practice law for three years.

The article went on to state:

(Par. 11) The order, filed by the court Monday, states that "satisfactory evidence has been received of your (Littlefield's) pleading guilty of a felony" and that Littlefield "did return to the State of Iowa and did engage in the practice of law."

6. "Attempting to commit a felony" is a misdemeanor in Kentucky and not a felony.

7. Glover obtained his information regarding plaintiff's disciplinary proceedings from public records in the office of the Clerk of the Supreme Court of Iowa.

8. Plaintiff was a "public figure" for the limited purpose of his disciplinary proceedings.

9. Glover's reference to plaintiff's "pleading guilty of a felony" in one of the latter paragraphs of the article was negligent but without actual malice and without a reckless disregard for the truth.

### Conclusions of Law

1. The court has jurisdiction over the parties and subject matter. 28 U.S.C. § 1332.[1]

1. In his complaint plaintiff asserts that the amount in controversy exceeds $10,000.00 and therefore meets the requirement for diversity jurisdiction under 28 U.S.C. § 1332. Generally the question of the presence of the jurisdictional amount is to be determined by the allegations of the complaint, provided they are made in good faith. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Zunamon v. Brown,* 418 F.2d 883, 887 (8th Cir. 1969); *Ringsby Truck Lines, Inc. v. Beardsley,* 331 F.2d 14, 15 (8th Cir. 1964); *citing Stewart v. Shanahan,* 277 F.2d 233, 236 (8th Cir. 1960); *Deutsch v. Hewes Street Realty Corporation,* 359 F.2d 96, 98–99 (2d Cir. 1966). Where plaintiff offers not a shred of evidence or testimony that he suffered any injury resulting from the alleged libel, there is a serious question of whether he ever had a good faith claim for more than $10,000.00.

This court understands that a finding at trial for less than the jurisdictional amount will not oust its jurisdiction. However, no proof may be evidence of no claim. Had this plaintiff not been an attorney, failure to present proof of damages could be viewed as a mistake. How-

2. Plaintiff failed to prove by clear and convincing evidence that defendants' acts were malicious.

3. Plaintiff failed to prove by a preponderance of the evidence that defendants libeled him. *McCarney v. Des Moines Register & Tribune Co.,* 239 N.W.2d 152, 155 (Iowa 1976); *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); *Time, Inc. v. McLaney,* 406 F.2d 565, 573 (5th Cir.), *cert. denied* 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969). *See New York Times v. Sullivan,* 376 U.S. 254, 283, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Cf., Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

4. Plaintiff failed to prove any injury or damages.

### Memorandum Opinion

In 1964 the United States Supreme Court established that a "public official" cannot be libeled unless publication of the false and allegedly libelous statement was made with "actual malice". *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).[2] Over a decade later it addressed the enigma of attempting to distin-

ever, plaintiff has been a practicing attorney and such conduct may be evidence of fraudulent assertion of the jurisdictional amount. As such it would be grounds for dismissal. *See Deutsch v. Hewes Street Realty Corporation, supra,* at 100–101; *Arnold v. Troccoli,* 344 F.2d 842 (2d Cir. 1965).

Although the jurisdictional amount is in serious doubt, the recognition that there is a difference between lack of proof of damages and knowing to a legal certainty "that plaintiff never was entitled to recover" the jurisdictional amount, induces the court to retain jurisdiction. *St. Paul Mercury Indemnity Co. v. Red Cab Co., supra,* 303 U.S. at 289, 58 S.Ct. at 590.

2. The "actual malice" test requires that a plaintiff prove that the defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Time, Inc. v. Firestone, infra,* 424 U.S. at 453, n. 2, 96 S.Ct. at 964. *See also St. Amant v. Thompson,* 390 U.S. 727, 731–732, 88 S.Ct. 1323 (1968).

guish between "public figures" to whom the *New York Times* standard would be applied and private persons whose privacy rights demanded more protection. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1976). And more recently the Court has attempted to flesh out its rather amorphous definition of "private person" in *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976). These cases attempt to balance the media's first amendment rights against a person's right to privacy in the form of his or her reputation.

The *Gertz* Court specifically rejected any test relying on the nature of issues under press scrutiny to determine the standard to be applied to conduct complained of as libelous. In so doing it overruled *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) and created a public-private test under which defamation of "public officials" and "public figures" requires "actual malice", and defamation of private persons requires a minimum of negligent conduct. The court stated:

> The extension of the *New York Times* test proposed by the *Rosenbloom* plurality would abridge this legitimate state interest [providing a legal remedy for defamatory falsehood injurious to reputation of a private individual] to a degree that we find unacceptable. And it would occasion the additional difficulty of forcing state and federal judges to decide on an *ad hoc* basis which publications address issues of "general or public interest" and which do not—to determine, in the words of Mr. Justice Marshall, "what information is relevant to self-government." *Rosenbloom v. Metromedia, Inc.*, 403 U.S. at 79, 91 S.Ct. [1811] at 1837. We doubt the wisdom of committing this task to the conscience of judges. . . .
> The "public or general interest" test for determining the applicability of the *New York Times* standard to private defamation actions inadequately serves both of the competing values at stake. 418 U.S. at 346, 94 S.Ct. at 3010.

In place of the "public interest" test it established the dichotomy of "public officials" and "public figures" on the one hand and private persons on the other. A person qualifying for public status sacrifices his or her privacy rights to the media's first amendment privilege except where "actual malice" can be proven. Alternatively, a private person need prove as little as negligence to establish libel since the media's first amendment privilege is considered diminished when it impinges on a private person's reputational rights.

The tension existing between the need for a vigorous and uninhibited press and the legitimate interest in redressing wrongful injury to reputation begs for accommodation. *Id.* at 342, 94 S.Ct. 2997. The court's attempt to establish a broad rule based on public-private classification is just such an accommodation, but like the standard in *Rosenbloom* it also is susceptible to inconsistent application. Rather than drawing lines between issues of public and private "interest", the courts are now required to decide who is and who is not a "public official" or "public figure" for purposes of first amendment privilege.

■ The plaintiff urges this court to find him a private person and apply the negligence standard to defendant's conduct. Defendant naturally argues the reverse, that for purposes of a disciplinary proceeding before the Iowa Supreme Court plaintiff should be considered a public figure, and the court agrees.

Plaintiff was an attorney evidently licensed by the Iowa Supreme Court to practice law. Prior to practicing in Iowa his license had been suspended in Kentucky after he pled guilty to "attempting to commit a felony" in connection with falsifying credit application forms. He was sentenced to three years probation in Kentucky. One of the conditions of probation was that he not practice law. Almost immediately he

started a practice in Iowa in violation of his probation. A grievance was filed with the Grievance Commission of the Supreme Court of Iowa. The Committee on Professional Ethics and Conduct of the Iowa State Bar Association processed the complaint and filed its findings with the Grievance Commission which recommended to the Supreme Court that plaintiff be suspended. That report and the disposition of the matter by the Supreme Court are clearly public record under Court Rule 118 of the Supreme Court of Iowa.

■ Under *Gertz* and *Firestone* the fact that these reports and findings were public is not in itself dispositive of the issue whether the plaintiff should be classified a public or private figure. Nor does the additional fact that defendant was reporting about quasi-judicial and judicial proceedings immunize it from liability under a *New York Times* actual-malice standard. *See Time, Inc. v. Firestone*, 424 U.S. at 455–457, 96 S.Ct. 958. Even the public's interest in knowing about the disciplining of an attorney from whom they may wish to seek services will not render this case susceptible to the *New York Times* actual-malice standard since *Gertz* and *Firestone* clearly indicate that only the plaintiff's personal status and conduct are relevant.

In this case the plaintiff was not thrust into the lime-light by the media. It found him there after he violated an express provision of his probation. Plaintiff is unlike Gertz and Firestone in that he was drawn into a public forum and debate as a result of his purposeful act of practicing law in Iowa in direct contravention of his probation. Where Gertz represented a client in a civil suit, Littlefield is the subject of a disciplinary proceeding. Nor is plaintiff here like Mrs. Firestone. The *Firestone* case evolved out of a messy divorce proceeding which the court noted was a private affair that only became public when Mrs. Firestone sought her sole legal remedy—court action to resolve the marital dispute. Thus, those persons involuntarily drawn into court or who are compelled to go there to obtain "release from the bonds of matri-mony" may in most cases retain private status. 424 U.S. at 454–455, 96 S.Ct. at 965.

The *Gertz* Court made it clear that:

In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. Most commonly, an individual voluntarily injects himself or is drawn into a public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions. 418 U.S. at 351, 94 S.Ct. at 3013.

Language from *Gertz* and *Firestone* indicates that finding plaintiffs "public figures" because they happen to be involved in litigation will be the exception rather than the rule. *See* 418 U.S. at 351; 424 U.S. at 457, 96 S.Ct. 958. However, the *Firestone* Court suggested that the nature of the issue may be relevant to the public-private struggle when it stated:

Imposing upon the law of private defamation the rather drastic limitations worked by *New York Times* cannot be justified by generalized references to the public interest in reports of judicial proceedings. The details of many, if not most, courtroom battles would add almost nothing toward advancing the uninhibited debate on public issues thought to provide principal support for the decision in *New York Times*. 424 U.S. at 457, 96 S.Ct. at 966.

This language seems to weaken *Gertz's* rejection of the *Rosenbloom* interest analysis. At any rate it establishes a standard by which the criteria evidencing the plaintiff's private or public status may be fleshed out by considering the nature of the controversy. Here, therefore, plaintiff's voluntary conduct, whether considered alone or in combination with the nature of the disciplinary proceedings, warrants a public status classification for the limited purpose of reporting events surrounding state disciplinary proceedings. *See Wolston v. Readers Digest Ass'n., Inc.*, 429 F.Supp. 167 (D.D.C. 1977), *affirmed* 188 U.S.App.D.C. 185, 578 F.2d 427 (1978); *Trans World Accounts,*

Inc. v. Associated Press, 425 F.Supp. 814 (N.D.Cal.1977); Rosanova v. Playboy Enterprises, Inc., 411 F.Supp. 440 (S.D.Ga.1976); Donaldson v. Washington Post Company, Civil Action No. 2331–76 (Superior Court of District of Columbia, Dec. 6, 1977).

What the Supreme Court of Iowa now considers the standard for recovery by private plaintiffs is difficult to divine in the wake of Gertz and Firestone. Much of the common law is obviously no longer constitutionally viable.

 The Iowa Court has expressly reserved comment on this issue; McCarney v. Des Moines Register & Tribune Co., supra, at 158; and it is not necessary for this court to speculate as to the present status of Iowa libel law concerning private plaintiffs.[3] It is sufficient to note that in the case at bar, even if plaintiff were found to be a private person, his utter failure to prove actual injury or damages or any kind[4] would bar recovery. Gertz, supra, 418 U.S. at 350, 94 S.Ct. 2997.

It is therefore

ORDERED

Dismissed.

**3.** For a discussion of state law after Gertz and Firestone see, Note, Iowa Libel Law and the First Amendment: Defamation Displaced, 62 Iowa L.Rev. 1067 (1977); Troman v. Wood, 62 Ill.2d 184, 340 N.E.2d 292 (1975).

**4.** Damage to reputation is not the only type of injury for which a plaintiff may be compensated. A state may recognize other injuries emanating from a published falsehood such as personal humiliation, mental anguish and suffering. Time, Inc. v. Firestone, supra, 424 U.S. at 460, 96 S.Ct. 958.